10539

DILLISHAW *ET UX.* v. BELL.

(105 S. E. 410.)

1. APPEAL AND ERROR—REINSTATEMENT OF APPEAL DISCRETIONARY WITH COURT.—The Supreme Court, having dismissed an appeal, has full jurisdiction to reinstate it, in its discretion.

2. PHYSICIANS AND SURGEONS—EVIDENCE HELD INSUFFICIENT FOR SUBMISSION OF NEGLIGENT DIAGNOSIS.—In action against a physician for negligence in diagnosing an injured knee as a torn muscle, instead of a broken kneecap, where there was undisputed evidence that a torn muscle would have produced the same depression in the knee, and that another physician, making a careful examination under the most favorable circumstances, did not believe that the kneecap was broken, Court's refusal to submit issue to jury *held* proper.

3. PHYSICIANS AND SURGEONS—EVIDENCE HELD INSUFFICIENT FOR SUBMISSION OF NEGLIGENCE IN TREATING BROKEN PATELLA.—In action against physician for negligence in treating broken patella by use of a figure 8 bandage, instead of by operation, evidence *held* insufficient for submission of case to jury.

4. PHYSICIANS AND SURGEONS—EVIDENCE HELD INSUFFICIENT FOR SUBMISSION OF WHETHER PHYSICIAN PREMATURELY DISMISSED PATIENT.—In action against physician for improper treatment of patient, evidence *held* insufficient for submission to jury of whether physician prematurely dismissed case, notwithstanding testimony that he had stated that patient was cured and could walk, where patient or other physicians called in to treat her did not do or refrain from doing anything on account of the untrue statement, and where patient knew that she was not cured and could not walk; such statement of physician being immaterial.

Before SHIPP, J. McCormick, October term, 1919.   Reversed.

Action by J. T. Dillishaw and his wife, Mrs. Effie Dillishaw, against Dr. D. A. J. Bell.   From judgment for plaintiff, defendant appeals.

*Messrs. W. K. Charles* and *C. C. Featherstone,* for appellant, cite: *Standard of care, skill and diligence required of*

NOTE.—On liability of physician or surgeon for failure to diagnose fracture or dislocation, see note in 28 L. R. A. (N. S.) 136.

*physicians and surgeons:* 22 A. & E. Enc. of Law 798, 808; 51 Me. 594; 81 Am. Dec. 388; 27 N. H. 460; 59 Am. Dec. 388; 72 Wis. 591; 7 Am. St. Rep. 900; 155 N. Y. 201; 63 Am. St. Rep. 655; 48 Am. Dec. 478; 93 Am. St. Rep. 655; 38 Am. St. Rep. 17; 14 Am. St. Rep. 340. *Rule as to liability of attorneys:* 18 Am. St. Rep. 320; 34 Am. Dec., page 90, and note; 4 Burr 2060; 16 Am. St. Rep. 592, note; 190 U. S. 933; 100 U. S. 623.

*Messrs. Geo. Bell Timmerman* and *·Jos. Murray,* for respondents, cite : *Supreme Court does not·acquire jurisdiction to the exclusion of the Circuit Court until the return is filed:* 40 S. C. 430. *Motion to dismiss made under subdivision 4, sec. 384, Code of Procedure 1912. Circuit Court has power to hear and determine such motions:* 52 S. C. 505; 72 S. C. 25. *Appeal having been dismissed there is no appeal to be perfected:* 24 S. C. 140; 22 S. C. 587. *Appellant cannot resort to sec. 387, Code of Procedure, after the question has been determined under sec. 384. Court will not hear appeal of a party who evades the process of the Court:* 33 S. C. 96. *Unwarranted abandonment of case, resulting in increased pain and suffering to the patient, will render physician liable in damages:* 30 Cyc. 1576; 16 S. E. 564; 18 L. R. A. 627; 94 S. E. 429. *Where there is evidence to sustain any specifications of negligence, case is for jury:* 100 S. C. 296; 100 S. C. 100. *If Judge misstates the issues .his attention must be called to the error:* 100 S. C. 463. *Standard of skill and care required of a physician:* 69 S. E. 500 (N. C.) ; 94 S. E. 427 (N. C.).

December 20, 1920.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This appeal was dismissed by Judge Prince. A motion was made in this Court to reinstate the appeal, and was resisted on the ground of want of jurisdiction. This Court has full jurisdiction to reinstate the appeal in its discretion, and its discretion grants the motion.

The respondent, Mrs. Effie Dillishaw, is the mother of several children, and on the 26th of October, 1917, arose to attend to the wants of one of them. She in some way fell to the floor and injured her knee. Dr. Bell, the appellant, was called to attend her. He came and made such examination as he could, but found that the knee was too painful to make a thorough examination, and, not having brought an anæsthetic with him, went away to get it. When he returned that same night, he brought with him another physician, Dr. Mattison, to assist him. When these two doctors had made an examination, they agreed that the injury was the result of a torn muscle, and not a broken kneecap or patella. The doctors bound up the knee with a bandage known as a "figure 8" bandage. The knee did not get well, and respondent called in Dr. Fuller. Dr. Fuller's diagnosis was a broken patella. Dr. Fuller called to his assistance Dr. Neel. Dr. Neel was doubtful. An X-ray picture was taken, and it confirmed the diagnosis of Dr. Fuller. Subsequently Drs. Fuller and Neel performed a surgical operation on the knee and cured it. Dr. Bell quit the case when Dr. Fuller was called. This action is brought against Dr. Bell for negligent treatment. The verdict was for plaintiff. The defendant moved for a nonsuit, and for a direction of verdict in his favor. Both motions were refused.

The defendant appealed upon several exceptions, but, in the view this Court takes of the case, these two only need be considered. There are three specifications of negligence, to wit: Negligence in making the diagnosis, negligence in the treatment, and negligence in a premature discharge of the plaintiff as cured.

1. As to negligence in the diagnosis: The strongest point in the plaintiff's favor was the statement that there was an indentation on the knee that followed the break in the bone, and large enough to hold the finger. There was undisputed evidence, however, that a torn muscle would have produced the same depression. The evidence is all one way—that an injured knee presents difficulties of diagnosis that misled the most skillful physicians. When Dr. Fuller was on the witness stand, he was asked: "Q. Would the average practicing physician, who knows enough to practice, have had any difficulty in making a diagnosis? A. I do not know what the average man would be able to determine."

That was the question as to negligence. The fact that the assistant of Dr. Fuller, who made a careful examination under the most favorable circumstances, did not believe the patella to be broken, negatives the charge of negligence in the diagnosis. When the testimony of the other witnesses, uncontradicted, is that a mistake in the diagnosis of the injury to a knee is liable to occur with the most skillful, is added, then negligence in a diagnosis goes out of the case.

2. As to negligence in treatment: All the doctors said that the figure 8 bandage was a well recognized method of treating this kind of injury, even where the patella was broken. It may be better to operate, but even operations are not always successful. There is no evidence from which negligence in treatment can be inferred.

3. As to premature dismissal: The plaintiffs testified that the defendant told them that Mrs. Dillishaw was cured and could walk; that this statement was untrue, and she could not walk at all. The appellant denies this, and states that he quit the case when he learned that Dr. Fuller had been called in, and that is the proper practice. If this statement is material, the case should have been sent to the jury. It is not material. There is nothing in the

case to show that they have done or refrained from doing anything to their injury on account of the untrue statement. The operation was not performed for months after they knew that the patella was broken.   More than this, even if Dr. Bell did tell Mrs. Dillishaw that she was cured and could walk, she knew better than any one else that she could not walk a step and was not cured.   There are some treacherous diseases, where visible manifestations disappear; but the skilled physician knows that the danger is not at an end. The ordinary mortal does not know it, and may be misled, to his injury, by a false statement.   This is not such a case. No injury did or could have resulted from the false statement, even if it was made.   Hence it is immaterial.

A verdict should have been directed for the defendant, and the judgment appealed from is reversed.

MESSRS. JUSTICES HYDRICK and WATTS concur.

MR. CHIEF JUSTICE GARY and MR. JUSTICE GAGE absent on account of sickness.