17188

MRS. ALMA BESSINGER, Appellant, v. DR. C. J. DE LOACH,
Respondent

(94 S. E. (2d) 3)

2

*Fred L. Hiers, Esq.,* of Allendale, *for Appellant,*

*Messrs. Randolph Murdaugh,* of Hampton, and *Douglas McKay, Jr.,* and *McKay, McKay, Black & Walker,* of Columbia, *for Respondent,*

July 16, 1956.

STUKES, Chief Justice.

Plaintiff brought this action for damages against the defendant, who was her dentist, and alleged injuries resulting from burns to her mouth which were caused by a substance that was applied to a denture made by the defendant for her and which he was fitting in her mouth; thereby the denture was relined and the substance hardened and became a part of it.

It was alleged in the complaint that the injuries were caused by the negligence, willfullness and wantonness of the defendant in administering the substance in her mouth for a longer period of time than necessary and by the failure of the defendant to care for the plaintiff during the time of treatment. In the answer there were denials of some of the allegations of the complaint and it was alleged that in the treatment of plaintiff as his patient the defendant, with due care, used methods and procedures which are standard in the dental profession.

Motion for nonsuit was denied at the conclusion of the evidence for plaintiff, but at the end of all of the evidence motion for directed verdict in favor of the defendant was granted. This appeal by plaintiff followed.

The defendant has challenged plaintiff's exceptions as too general and not in conformity with the pertinent rule of this court. However, upon consideration of them we conclude that they are not subject to the stated objections. They fairly raise the issue of whether the court erred in directing the jury to find verdict for the defendant.

The evidence was abundant that plaintiff suffered severe burns of her mouth. When she complained to defendant on the next day he treated her mouth with an antiseptic. Upon her subsequent complaint he recommended that she consult a physician, which she did. The physician examined and treated her for burns of her gums, palate and tongue, and finally sent her to a hospital where she was fed intravenously. She was released after a few days but later had to undergo further hospitalization. The physician testified in her behalf concerning her symptoms and the drugs which he administered.

The evidence developed a controversy between the defendant and the physician, the former and his witnesses contending that the treatment by the physician aggravated plaintiff's condition. If this should become an issue, it would be for the jury. However, the following principle may come into play upon re-trial: "The general rule is that if an injured person uses ordinary care in selecting a physician for treatment of his injury, the law regards the aggravation of the injury resulting from the negligent act of the physician as a part of the immediate and direct damages which naturally flow from the original injury." *Corbett v. Clarke,* 187 Va. 222, 46 S. E. (2d) 327, 328. See 15 Am. Jur. 437, 438, 495, Damages, secs. 38, 84, 85. Annotations: 19 Ann. Cas. 981, which is appended to our tangent case of *Berry v. City of Greenville,* 84 S. C. 122, 65 S. E. 1030; 21 Ann. Cas. 516; 48 L. R. A., N. S., 116, which refers to "this simple rule"; 8 A. L. R. 506; and 39 A. L. R. 1268. Restatement, Torts, sec. 457. *Hardin v. Southern R. Co.,* 128 S. C. 216, 122 S. E. 582, is not in conflict with the foregoing because it was concerned with alleged malpractice of a physician employed by the employer of an injured employee. See, however, the comment upon such cases in 15 Am. Jur. 496, sec. 86, and 8 A. L. R. 515. Compare *Easler v. Col. R. Gas & E. Co.,* 100 S. C. 96, 84 S. E. 417, L. R. A. 1915D, 883, where a carrier was held liable for malpractice upon a minor who was sent by the carrier to its physician over the protest of his parent.

Plaintiff's daughter testified at the trial of the case in hand that she went to defendant to inquire as to the cause of the injury and obtain information as to the nature of the substance which he had used. Defendant was quoted in part by the witness, as follows: "He told me he must have left it in too long is the only thing he knew, he neglected going back to her and must have left it too long." Plaintiff testified that it was left in her mouth for about fifteen minutes; defendant said five or ten minutes. A fellow dentist, who testified as an expert witness in behalf of the defendant, stated that his practice in such cases is to set a time clock for seven or eight minutes, quoting, "and go back and check it. * * * I would take it out if it was burning or getting that sensitive or whatever you feel."

*Green v. Shaw,* 136 S. C. 56, 134 S. E. 226, 227, 48 A. L. R. 243, is helpful. There the action for damages was against a prominent physician who was charged with negligence, willfullness and wantonness in failing to properly protect the finger of the plaintiff when he treated it with x-ray to remove warts, whereby it was severely burned, requiring long treatment and deforming plaintiff and partially incapacitating her. It was also alleged that the finger was subjected to the x-ray for too long a period of time, which is parallel to the complaint of the instant plaintiff. The case was submitted to the jury which found for the defendant; it was reversed for new trial because of errors in the first trial. In the course of the opinion it was said:

"This suit was based upon certain specific acts of the defendant, alleged to be negligent, willful, and wanton. No attack was made upon, nor does this action involve, his general skill, competency, ability, or reputation. A physician might be ever so skillful or competent in a general way, or might have an unexcelled reputation, and yet be guilty of the grossest negligence in his treatment of a particular case."

The foregoing quotation is applicable to the facts of this case although here the defendant is a dentist, there a phy-

sician. In *Hyrne v. Erwin,* 23 S. C. 226, verdict for plaintiff was sustained on appeal in an action for malpractice against two physicians, father and son, who practiced as partners. Defendants treated the broken arm of plaintiff who alleged that they were negligent and unskilled whereby use of the arm was lost. In the report of the statement of facts it was said that the testimony for the defendants tended to show that the physician-partner who first treated plaintiff had done all that approved practice required. Nonsuit was reversed in *Smith v. Baker,* 172 S. C. 75, 172 S. E. 767, and the case was remanded for trial. It was a malpractice action for damages for alleged negligence, etc., in a surgical operation and subsequent treatment. None of the evidence was stated in the report of the case but it was concluded that supporting testimony had been introduced, which should have been submitted to the jury. Of opposite result to our foregoing cases are *Thomas v. Register,* 110 S. C. 173, 96 S. E. 517, 518, and *Dillishaw v. Bell,* 115 S. C. 258, 105 S. E. 410. In the former, verdict for plaintiff was reversed and nonsuit ordered upon the conclusion that no negligence of the physician-defendant was shown and it was said that the only contention of plaintiff was that persistent treatment after complaint of pain indicated negligence. "Negligence is not a reasonable inference from bare fact that pain accompanied the treatment." Dillishaw complained of a wrong diagnosis and the court found that there was no evidence to support the allegation of negligence of the defendant-physician, either in his diagnosis or in the treatment which he administered.

The evidence in the case here will not be reviewed further than it has been above. Under it the gist of plaintiff's contention is that the substance was negligently and wantonly left in her mouth too long and without due care on the part of the defendant to observe plaintiff and her suffering during the treatment and heed her complaints. Considering all of the evidence in the light most favorable to plaintiff, as we must, we think that it is susceptible of more than one reasonable inference, and the issue

of defendant's liability should have been submitted to the jury.

There has been found in our reports no case involving liability for malpractice of a dentist, but it is well settled that the duty and liability of a dentist correspond to those of physicians and surgeons generally 41 Am. Jur. 206, Sec. 88. 129 A. L. R. 101. Many decisions of other courts in cases against dentists are collected in the annotations in 69 A. L. R. 1142 and 129 A. L. R. 101, from which the governing principles are deducible. A dentist is bound to use reasonable care in the performance of professional services and to act according to his best judgment in treating his patients; but is only bound to possess and exercise that degree of skill and learning which is ordinarily possessed and exercised by members of his profession in good standing in the same general neighborhood or in similar localities. Failure to perform his duty in either of these respects is malpractice. 69 A. L. R. 1143. The burden of proof of negligence and proximate cause is, of course, upon the plaintiff. In the instant case plaintiff concedes defendant's requisite skill and learning, but complains of his alleged negligence which she contends was the proximate cause of her injuries. He contends that such injuries as she suffered at his hands resulted from her allergy or unusual sensitiveness to the relining substance. It is our conclusion that the evidence thereabout presented issues for the jury.

Review of the decisions of other courts indicates that the question of a defendant's negligence in such a case as this and the question whether the negligence, if established, was responsible for the particular injury alleged, seem to have been regarded as questions for submission to the jury in most of the reported cases, at least where the evidence touching these points has been in conflict. 69 A. L. R. 1158.

In *Wible v. Shor*, 1931, 102 Pa. Super. 527, 157 A. 322, effort was being made to fit a denture which the defendant dentist had made for the plaintiff, as here. The plate was of hecolite and was pliable when heated. The plaintiff com-

plained of the heat when it was put in her mouth but she was held in the chair until the plate cooled. Her mouth was badly burned and required extended medical treatment. Verdict for the plaintiff was affirmed despite appellant's contention that it was established in his behalf by the testimony of three experienced dentists that the method employed in adapting the plate to plaintiff's mouth was usual and proper. The court pointed out that the issue was not a disputed question of scientific dentistry but simply involved the insertion of a superheated plate in plaintiff's mouth to adjust it, and the issue was whether the plate, in fact, was in such a heated condition as to inflict the burns. The case is closely analogous to that in hand; here the issues are whether defendant negligently left the substance in plaintiff's mouth for too long a time without attention and, if so, whether that caused her injuries.

A leading case upon the liability of a dentist for malpractice is *Whetstine v. Moravec,* 1940, 228 Iowa 352, 291 N. W. 425, which involved the passage of the root of a tooth into the plaintiff's lung as the result of an extraction. The doctrine of *res ipsa loquitur* was applied, which we do not have, but many cases were cited from other jurisdictions in which recoveries were permitted against dentists and physicians without the evidence of experts that negligence was present, and without the aid of the doctrine of *res ipsa loquitur.* Another Iowa case was cited, *Evans v. Roberts,* 172 Iowa 653, 154 N. W. 923, 926, in which a surgeon, while removing adenoids from a child, negligently cut off a portion of her tongue. The following is taken from opinion in the *Evans case,* which has been frequently cited:

"If we understand counsel correctly, it is their contention that negligence in cases of this nature can be established only upon the testimony of competent experts. What may be the rule where the sole question is upon the treatment of the diseased part, and whether it was in accordance with approval (sic) and medical standards, we need not here decide, for, as we have already noted, this is not a case of that kind.

The jury did not have to consider whether the method of the defendant in removing the adenoids was correct or scientific, but whether the unintentional wounding of plaintiff's tongue was occasioned by lack of reasonable care on his part. This, it would seem very clear, involves no question of science, or necessarily of expert knowledge."

The rule of *res ipsa loquitur is* not accepted in Michigan, as it is not here. *Eickoff v. Beard-Laney, Inc.,* 199 S. C. 500, 20 S. E. (2d) 153, 141 A. L. R. 1010. That was referred to in *Loveland v. Nelson,* 235 Mich. 623, 209 N. W. 835, but it was stated that the court had uniformly held that negligence may be established by circumstantial evidence and permitted recovery by plaintiff when a dentist had injected lysol into her gums instead of an anesthetic.

The following is quoted from *Mastro. v. Kennedy,* 1943, 57 Cal. App. (2d) 499, 134 P. (2d) 865, 867: " 'It was not necessary for any dentist or physician to state that the conduct of the defendant was negligent or in conflict with the usual established practice of the profession in that vicinity to administer a local anesthetic for the purpose of extracting a tooth without sterilizing the needle or the flesh into which it is inserted. The court will take judicial knowledge of the necessity to use ordinary care to procure sterilization under such circumstances.' [*Dimock v. Miller,* 202 Cal. 668, 262 P. 311.]"

And from *Hill v. Parker,* 1942, 12 Wash. (2d) 517, 122 P. (2d) 476, 482: "Usually, the plaintiff in a malpractice action must, by expert testimony, establish the applicable standard of care, skill, and diligence, and show that the defendant has in some way departed therefrom. The reason for the requirement is that, ordinarily, such matters involve technical knowledge beyond the ken of the laymen. [Citations.] There are exceptions, however, and this court has many times held that a malpractice case may be proved without the aid of expert testimony by a chain of circumstances from which an ordinary layman may reasonably and naturally

infer the ultimate fact required to be established. [Citing other Washington cases.]"

*Ambrosi v. Monks,* D. C. Mun. App., 1951, 85 A. (2d) 188, 189: "There are exceptions to the rule that expert testimony is necessary in malpractice cases."

*Wheaton v. Rubin,* 1948, 162 Pa. Super. 320, 57 A. (2d) 589, 590: "All the dentists in the world unanimously swearing that the plate was made by the exercise of that degree of care and skill ordinarily possessed by dentists generally would not alter or refute the fact, virtually conceded by appellant, that the denture did not fulfill the reasonable functional requirements expected of such an appliance."

In *Harris v. Wood,* 1943, 214 Minn. 492, 8 N. W. (2d) 818, 821, verdict for damages for wrongful death was sustained in a malpractice action against a dentist whose patient died in his chair when anesthetized by gas. Dentists testified for the defendant, none for plaintiff; however, the latter had a medical witness. The court said: "There is no dispute that the rule is that the duty of a dentist in administering an anesthetic to a patient is to exercise such reasonable care and skill in that behalf as is usually exercised by dentists of good standing in the community where he practices. In our opinion, defendant employed the methods and techniques considered to be good practice according to such standards. The real question is whether in the particular manner in which he employed such methods and techniques he exercised due care. We think the evidence supports a finding that he did not. * * * It is negligence for a dentist to persist in the use of an anesthetic on a patient after a warning which would impel a person of reasonable prudence to desist." Fortunately, this is a rare and extreme case; its relevancy here is that it is illustrative of the cases in which supporting dental-expert testimony is not necessary to prove negligence on the part of a dentist.

We conclude that under the facts in this case the contention that plaintiff may establish actionable negligence only by expert testimony, in addition to that

of the physician who attended her, is untenable in view of the authorities which have been cited. The issues are simple enough for the understanding of a jury of laymen without the aid of evidence of dental experts; which is not to say, however, that relevant testimony of such experts may not be adduced by the litigants, or either of them.

It was error to direct the verdict.

Reversed and remanded for new trial.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.